IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

| | |
|---|---|
| CMFG LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>STEVEN NICHOLAS,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff CMFG Life Insurance Company ("CMFG"), hereby files and asserts its Complaint against Defendant Steven Nicholas ("Nicholas"), and in support thereof alleges as follows:

**PARTIES**

1. CMFG is a life insurance corporation organized and existing under the laws of the state of Iowa, with its principal place of business in Madison, Wisconsin. CMFG is therefore a citizen of the States of Iowa and Wisconsin.

2. Upon information and belief, Steven Nicholas is an adult individual who resides at 4557 Powderhorn Place Drive, Clermont, Florida, in Lake County, Florida.[1] Mr. Nicholas is therefore a citizen of the State of Florida.

---

[1] *See* attached Exhibit B, which is a true and correct copy of a letter sent by CMFG's claims department to Mr. Nicholas at the address previously provided. Mr. Nicholas thereafter contacted CMFG by telephone to initiate a claim.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between CMFG, a citizen of Iowa and Wisconsin, and Nicholas, a citizen of Florida, and because the amount in controversy exceeds $75,000. Specifically, as set forth in more detail below, CMFG seeks a judicial declaration regarding the validity of a purported life insurance policy of which Nicholas is purportedly the beneficiary, which had an Amount of Insurance of $200,000.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because, upon information and belief, Nicholas resides in this judicial district.

## FACTUAL BACKGROUND

**The Application**

5. On or around January 14, 2019, CMFG received an online application for a TruStage Individual Life Insurance policy (the "Application") on the life of Steve Churon ("Churon"). A true and correct copy of the purported policy at issue, which includes a copy of the Application, with appropriate redactions, is attached hereto as Exhibit A.

6. The Application sought a term life insurance policy with stated death proceeds (the "amount of Term Coverage") of $200,000. *See* Ex. A at 10.

7. The Application identified Nicholas, who was described as Churon's "[g]randchild," as the sole beneficiary of the prospective policy. *Id.*

8. In the Application, CMFG asked the proposed insured to provide his

address. The Application contained a representation that Churon resided at "1446 Breakwater way [sic][,] Winter garden [sic], FL 34787." *Id.*

9. In the Application, CMFG asked the proposed insured to provide his height and weight. The Application contained a representation that Churon was 5'5" and weighed 148 pounds. *Id.*

10. In the Application, CMFG asked the proposed insured to provide his phone number. The Application contained a representation that Churon's phone number was (708) 870-2196. *Id.*

11. In the Application, CMFG asked the proposed insured to provide his email address. The Application contained a representation that Churon's email address was viviansoliz2222@yahoo.com. *Id.*

12. In the Application, CMFG asked the proposed insured to select a payment option for premium payments, should the Policy be approved. The Application indicated that payments should be deducted from a Wells Fargo Bank checking account on a monthly basis, and provided the routing and account numbers for that account. *Id.* at 11.

13. In the Application, CMFG asked the proposed insured to execute an "Agreement" that his representations were "true to the best of [his] knowledge and belief" and to acknowledge that "[a]ny person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree." *Id.*

14. The Application was purportedly executed electronically by Churon on January 14, 2019. *Id.*

### The Policy

15. On or about February 7, 2019, CMFG issued Policy No. LC0511738 (the "Policy"), insuring Churon's life. The Policy had an effective date of January 14, 2019. *See* Ex. A.

16. Based upon the representation that Churon lived in Florida, the Policy was issued on Florida forms under the law of Florida. *Id.* It is governed by the law of Florida.

17. An insurance policy is a legal contract between the insurer and the policy's owner. *See* Ex. A § 1.01 ("The Owner is also referred to as 'you', 'your' or 'yours'."), § 8.01 ("This policy, any attached rider(s), endorsement(s), and/or amendments, and any application attached to the policy, are the entire contract between you and us.").

18. The "Owner" of the Policy is identified as Steve Churon. *Id.* at 4.

### Claim for Benefits

19. Upon information and belief, Churon passed away on December 7, 2022 in Middlesex County, New Jersey. His remains were removed from New Jersey and he was buried in Forest Park, Illinois.

20. On December 16, 2022, after learning of Churon's death, CMFG sent a letter to Nicholas extending its condolences on Churon's death and requesting that Nicholas provide a copy of Churon's death certificate as well as a completed

Claimant's Statement.

21.     On December 27, 2022, Nicholas, writing from the email address "mannorg773@gmail.com," emailed CMFG a copy of Churon's death certificate. The death certificate listed Nicholas as the "informant," with an address of 4557 Powderhorn Place Drive, Clermont, Florida.

22.     Although Nicholas did not complete a Claimant's Statement, CMFG investigated the potential claim for policy benefits.  During this investigation, CMFG uncovered evidence indicating that Churon himself did not apply for the Policy and that the Policy was procured by another individual or individuals who posed as Churon in order to obtain insurance on Churon's life.

23.     For example, although CMFG's review of publicly available information indicated that Churon had been associated with numerous residences during his lifetime, including addresses in New York, New Jersey, Illinois, California, and Nevada, there is no indication that Churon *ever* resided in Florida, let alone at the address listed in the Application.

24.     To the contrary, CMFG's review of publicly available information indicated that the address listed on the Application was *Nicholas's* address at the time, not Churon's.

25.     Further, CMFG's investigation uncovered that the Application was one of a total of *four* applications submitted for insurance on the life of Churon over several months from August 2018 through January 2019.  The three previous applications had all been declined by CMFG's automated underwriting system due

to Churon's previous, and undisclosed, medical conditions. The Application was not flagged by CMFG's underwriting system because the individuals applying for the Policy waited long enough that the previous condition would no longer be revealed.

26. A review of the previously submitted (and declined) applications, however, revealed some telling information. Specifically, although each sought insurance on the same individual, Churon, and sought to name the same individual, Nicholas, as the beneficiary, the applications contained markedly inconsistent information.

27. For example, in each of the prior three applications, a representation was made that Churon's email address was "mannorg773@gmail.com." That was the same email address from which Nicholas submitted Churon's death certificate to CMFG in 2022.

28. Similarly, the various applications listed differing addresses and phone numbers for Churon. Of the four applications (including the Application that ultimately resulted in the issuance of the Policy), three different addresses and two different phone numbers were listed, *none* of which appear to be associated with Churon himself.

29. Moreover, the applications contained materially different personal information regarding Churon. As noted above, the Application represented that Churon was 5'5" and weighed 148 pounds. Two of the previously submitted applications represented that Churon was 5'8" and weighed 185 pounds, and still another represented that Churon was 5'3" and weighed 160 pounds.

30. Finally, each of the four applications requests that premium payments be deducted from a different checking account—including two different accounts listed on two applications that were submitted (and declined) on the same day.

31. CMFG's investigation further uncovered that the Wells Fargo checking account listed in the Application, and from which the initial premium payment was deducted, does not belong to Churon, and thus Churon himself did not make the initial premium payment.

32. Finally, CMFG's investigation uncovered that several of the declined applications seeking insurance on Churon came from the same device and during the same online sessions as applications that were started and ultimately either declined or abandoned on other insureds.

33. Upon information and belief, all of this evidence indicates that Churon himself did not submit these applications to CMFG, but that all the applications (including the Application that ultimately resulted in the issuance of the Policy) were submitted as part of a fraudulent scheme by other individuals to impersonate and obtain insurance on Churon's life without his knowledge or consent.

**FIRST CAUSE OF ACTION**
**DECLARATORY JUDGMENT – NO VALID POLICY EVER EXISTED**

34. CMFG hereby incorporates by reference the allegations contained in paragraphs 5-33 as if set forth herein at length.

35. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), permits "any court of the United states, upon the filing of an appropriate pleading, [to]

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

36. As set forth above, the Policy purports to be a contract between CMFG and Steve Churon, as its Owner.

37. Upon information and belief, Churon never applied for the Policy, and never authorized anyone to apply for the Policy on his behalf, and never consented to the issuance of the Policy.

38. Upon information and belief, an impostor, posing as Churon, applied for and obtained the Policy.

39. That imposter had no authority or capacity to contract with CMFG on behalf of Churon, nor did CMFG intend to contract with anyone *other* than Churon.

40. Upon information and belief, there was thus no "meeting of the minds" as between CMFG and Steve Churon so as to create a valid and binding contract—the Policy.

41. Nicholas, on the other hand, contends that he is entitled to payment of the death proceeds under the Policy.

42. As a result, there is a current, existing controversy between CMFG and Nicholas regarding whether a valid Policy exists and whether any benefits are due.

43. CMFG is entitled to a judicial declaration that the Policy was never validly issued, and that by tendering back to Nicholas the premiums paid on the Policy it will have discharged any obligations it may have to Nicholas.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT – FLA. STAT. § 627.404(5)

44. CMFG hereby incorporates by reference the allegations contained in paragraphs 5-33 as if set forth herein at length.

45. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), permits "any court of the United states, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

46. Fla. Stat. § 627.404(5) provides that a "contract of insurance upon a person . . . may not be effectuated unless, on or before the time of entering into such contract, the person insured, having the legal capacity to contract, applies for or consents in writing to the contracts and its terms[.]"

47. Upon information and belief, Churon never applied for or consented in writing to the issuance of the Policy or its terms.

48. As a result, the Policy is void *ab initio*.

49. Nicholas, on the other hand, contends that he is entitled to payment of the death proceeds under the Policy.

50. As a result, there is a current, existing controversy between CMFG and Nicholas regarding whether a valid Policy exists and whether any benefits are due.

51. CMFG is entitled to a judicial declaration that the Policy was never validly issued, and that by tendering back to Nicholas the premiums paid on the Policy it will have discharged any obligations it may have to Nicholas.

WHEREFORE, CMFG respectfully requests the entry of an Order by this Court as follows:

A. Declaring that the Policy was never validly issued or, in the alternative,

is void *ab initio*;

B.  Declaring that by tendering to Nicholas the premiums paid on the Policy, CMFG has fully discharged any obligations it may have had to Nicholas;

C.  Awarding CMFG its costs associated with bringing this lawsuit, as determined by the Court; and

D.  Awarding CMFG any further relief this Court deems appropriate.

**Dated: May 18, 2023**

Respectfully submitted,

*/s/ Traci T. McKee*
Traci T. McKee, Florida Bar No. 053088
FAEGRE DRINKER BIDDLE & REATH LLP
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Phone: (239) 286 6900
traci.mckee@faegredrinker.com